UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.

ALEXANDER YANES

    Plaintiff,

v.

THE SWATCH GROUP (U.S.) INC.

    Defendant.                      /

## COMPLAINT

Plaintiff, ALEXANDER YANES ("Plaintiff"), by and through his undersigned attorney, sues Defendant, THE SWATCH GROUP (U.S.) Inc. ("Swatch"), and alleges as follows:

### INTRODUCTION

1. This is an action for damages, declaratory, and injunctive relief by Plaintiff against Swatch for race and national origin discrimination under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, the Florida Civil Rights Act of 1992 ("FCRA"), and 42 U.S.C. §1981 ("§1981") as

well as for retaliation under Florida's Private Whistleblower Act, Florida Statute §§448.101.104 ("FPWA").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and Title VII. The Court's supplemental jurisdiction is invoked for the Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

3. Venue properly lies in this judicial district pursuant to 28 U.S.C. §1391(b), in that the Defendant maintains offices within this judicial district, carries on commerce with citizens of this judicial district at open places of business located within this judicial district and Plaintiff both resides and worked for Swatch within this judicial district.

## PARTIES AND EXHAUSTION OF REMEDIES

4. Plaintiff is a Hispanic male of Cuban heritage that was born in the United States of America, sui juris, and, at all times material to this action, was a resident of Broward County, Florida.

5. Swatch is a foreign for-profit corporation with its principal corporate address located at 1200 Harbor Boulevard, Weehawken NJ.

2

6. Plaintiff has complied with all conditions precedent to jurisdiction under Title VII and the FCRA in that he filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") within 300 days of the unfair employment practices alleged in this Complaint; Plaintiff has filed this suit within 90 days of receiving a Right to Sue notice from the EEOC which was received on July 30, 2022; and Plaintiff is filing this Complaint within the FCRA's four (4) year statute of limitations for the alleged discriminatory acts. Thus, all administrative prerequisites have been satisfied and this suit is timely filed.

## GENERAL ALLEGATIONS

7. Alexander Yanes (hereinafter the "Plaintiff") was hired on or about January 29, 2018 as a Watch Technician by The Swatch Group (U.S.) Inc. (hereinafter "Swatch").

8. As a Hispanic male of Cuban heritage born in the United States with skin colored consistent with a stereotyped expectation of "Caucasians", a native speaker's understanding and ability to speak English and with an accent consistent with most Americans born in Broward County, the Plaintiff faced immediate hostility and harassment from a number of his fellow workroom employees as the majority were first generation immigrants from Cuba and a significant portion of the remainder coming from Spanish-speaking countries throughout Central and

South America or the Caribbean. Plaintiff believes this stems from a jealousy from his relatively speaking easier and more prosperous upbringing and perceived ease of relating to upper management in the Miami and New Jersey offices from the shared language and accent.

9. Prior to filing his complaint with the EEOC and FCHR, Plaintiff did not receive any formal or informal disciplinary action from SWATCH.

10. As soon as Plaintiff started working in the workroom, he began to experience hostility, harassment and intimidation from some of the employees who were born in Cuba and other Spanish-speaking countries.

11. At some point in or about the month of April 2018, the Plaintiff began taking Zoloft on orders of his personal physician in order to relieve his anxiety issues triggered by the continual onsite work harassment.

12. Throughout his employment with Swatch, the Plaintiff repeatedly complained about the continual harassment from his coworkers to his direct supervisor and shop manager Andy Czanek, the onsite office manager Jasmine Arencibia, and the human resources manager located at the New Jersey headquarters, Suzette Truehaft. This continual harassment mainly took the form of stealing and/or moving watch parts the Plaintiff was utilizing, intimidation by staring at him and "bumping" him physically shoulder to shoulder, and locking him inside and/or shutting the door stopping air flow to a high temperature

workroom that the Plaintiff was daily required to work in order to clean the watches.  To Plaintiff's knowledge, no discipline was imposed on the perpetrators of the harassment.

        13.     Although the Plaintiff complained repeatedly in person to the three individuals with oversight of his position noted above, the first formal email request that Plaintiff sent to address the situation was issued on January 2, 2019 to the HR Manager Suzette Truehaft.  The Plaintiff specifically complained about the constant interference with his work as well as missing parts.  The Plaintiff also said that he was repeatedly required to work in the cleaning room which was frequently over one hundred and two degrees Fahrenheit (102 degrees F) due to inappropriate ventilation and mechanisms which generated high heat.  The Plaintiff complained that coworkers would frequently shut the door or "lock him" in the high temperature room and that he was starting to frequently throw up due to the high heat and dehydration.  The Plaintiff asked to be transferred to any other position or any other location as a result.

        14.     The Plaintiff was not transferred to another position or location, but did receive the maximum authorized raise on or about February 2019 and was under the belief he was making more than anyone in his particular job specialty.  This opinion was apparently shared by his coworkers.  As a result of the raise, the Plaintiff was informed he needed to submit a new IRS tax form which he provided.

However, after turning in the tax form to his manager, someone changed an answer to a race related question and indicated that he was a tax-exempt Native American. This "prank"/harassment had serious financial repercussions as the Plaintiff knew he had received a raise but did not catch that taxes were not being withheld. The following year, the Plaintiff had a substantial tax bill due and it placed him under severe financial strain as he had not been saving for the burden.

15. The Plaintiff was involved in a car accident September 22, 2019. The following day he went to a Memorial Healthcare System's Urgent Care Center and was provided a soft cervical collar due to a neck sprain.

16. The Plaintiff's shop manager Andy Czanek sent an email September 30, 2019 stating "Boy you should have gone ETO (Extended Time Off) from the beginning on. Tito is out today it would have been a nice day for you, Haha." "Tito" was the name of one of the Plaintiff's principal harassers with the legal name of Gustavo Jaramillo. This email provides proof that management was aware that coworkers were harassing the Plaintiff.

17. On October 2, 2019, the Plaintiff complained to Andy Czanek and Jasmine Arencibia that coworkers were continuing to close the door to the cleaning room leaving him subjected to high heat temperatures.

18. On November 1, 2019, as the harassment continued despite continual complaints to his direct supervisor, shop manager and HR manager, the Plaintiff

complained directly via email to Peter Foster, Vice President of Customer Service, a high level executive at the New Jersey headquarters responsible for oversight of all service centers.  The Plaintiff complained about loud and angry verbal fights with Gustavo "Tito" Jaramillo and Maikel "Mike"/"Micheal" Roqueta, missing/stolen parts, having his work "sabotaged" and a hostile work environment. Peter Foster agreed to meet with the Plaintiff, "Tito", "Michael", Andy Czanek and three other coworkers that were harassing the Plaintiff regularly.

19.     On November 12, 2019, the Plaintiff met with Peter Foster and everyone listed in the November 1, 2019 e-mail.  As the Plaintiff complained about work being sabotaged and that he was being harassed, "Michael" started yelling and banging on the desk.  The Plaintiff said "See this is what I'm talking about, this hostile work environment."  Peter Foster's response was only that "Alex if you were being falsely accused wouldn't you be angry?"  The meeting was then halted abruptly and as far as the Plaintiff is aware no further action was taken.

20.     The harassment would continue including repeated "bumping" and "hostile approaches" while the Plaintiff was working on watch components.  This would cause the entire work to become disrupted and result in a lot of lost productivity.

21.     As the pain did not recede, the Plaintiff went to the Spine Institute for an MRI on November 24, 2019 which found a C3 broad based bulging annulus, C4

right paracentral herniation, C5 broad based bulging annulus, C6 posterior central disk herniation with flattening of the ventral thecal sac, L3 broad based bulging annulus and mild foraminal stenosis bilaterally, L4 broad based bulging annulus, and L5 broad based bulging annulus which abutes the S1 nerve.

22. On November 27, 2019, the Plaintiff emailed HR Manager Suzette Truehaft and Andy Czanek letting them know of the MRI results and that current work setup was causing pain. Instead of working to accommodate his injuries, Swatch roughly around this time eliminated the "cleaning crew" which added additional duties including requiring the Plaintiff to lift more than seventy five pounds (75 lbs) as well as mop and dust the entire service center.

23. The Plaintiff complained directly to Peter Foster again on December 19, 2019, about the harassment as he felt "smothered" and harassed while working on machines. Peter Foster responded that he watched the video and saw two occasions where people did appear to approach the Plaintiff for no reason and enter his personal space, but as far as Alex was aware no action was taken.

24. At some point in December 2019, the Plaintiff had an in-person meeting with Jasmine Arencibia and Andy Czanek and Plaintiff was told he needed to stop being "so sensitive" to the ongoing harassment from his coworkers and that he needed to deal with the situation on his own as management was tired of the complaints.

25. At some point in January 2020, the Plaintiff found out that his taxes had not been withheld and it put him in an economic crisis because he had received a raise the previous year and did not suspect he would owe a huge tax bill. Plaintiff asked to see the tax form which triggered the issue and someone had altered his completed form to indicate he selected tax exempt "Native American". The altered selection had a different ink than what was used for the rest of the form.

26. On March 12, 2020, the Plaintiff notified Swatch that he was going to report them to the Equal Employment Opportunity Commission over the continuing harassment and asked for a copy of the harassment policy. The Plaintiff was never provided a copy of the harassment policy.

27. On or about March 13, 2020, Plaintiff filed a complaint with the EEOC about the ongoing harassment, about the high heat issue and that other employees would attempt to purposefully trigger his hand tremors due to the anxiety and not allow him to complete his work.

28. On March 16, 2020, the Plaintiff had a large thermal mug he used to stay hydrated while in the cleaning room subject to high heat temperatures. Jasmine Arencibia, the office manager threw it away and stated to him that it was because it had been left in the cleaning room. The Plaintiff had left the mug out several times before without incident or warning.

29. On March 17, 2020, The Plaintiff received an email from his manager Jasmine Arencibia stating that he would be teamed up with "Tito" (the one of the principal harassers) and would have to work on Thursdays which was in direct conflict with the custody agreement where he needed to pick up his daughter (this was previously known). The custody agreement had been provided to the employer previously and was used to create a schedule without conflict in the past. The Plaintiff complained to Jasmine Arencibia, Andy Czanek and Suzette Truehaft and nothing was done.

30. Similarly, On March 17, 2020, Andy Czanek complained about Plaintiff's work product for the first time, and the Plaintiff reminded Andy that his herniated disks prohibiting him from bending down without pain, that he was being required to lift more than seventy five pounds (75 lbs.) to operate the machines and the temperature in the cleaning room was never fixed. No accommodations were made to match the Plaintiff's herniated disks, in fact Swatch had removed smaller ultrasonic machines that the Plaintiff could more easily operate for larger versions and they fired a "cleaning crew" which worked with the larger machines requiring him to take on their duties.

31. After EEOC Letter was filed, the Plaintiff was not allowed to take any additional time off even for health or family related issues.

32. On March 19, 2020, the Mayor of Miami closed down all businesses within the city except for essential workers.

33. On March 20, 2020, Swatch required the Plaintiff to report to work anyways in order to place tools and other things in to storage. Afterwards, the Plaintiff was notified his work was being terminated and he should apply for unemployment.

34. Swatch attempted to reopen May 11, 2020, and allegedly sent the Plaintiff an email to with an "offer" to return to work. Due to the hostile work environment, lack of accommodations and disability related to his injuries, the Plaintiff did not accept the offer to return to work.

35. The city was not reopened for nonessential businesses until May 20, 2020.

36. On June 16, 2020, the Office of Disability Determination had the Plaintiff meet with their licensed psychologist because he was on Zoloft and other medications and wanted an independent examination of him. The examiner found in diagnostic impressions Axis 1 is Unspecified Depressive Disorder, Unspecified Anxiety Disorder, R/O Major Depressive Disorder Recurrent, R/O Obsessive Compulsive Disorder, Axis 2 R/O Obsessive Compulsive Personality Disorder. For the next three years, Plaintiff was placed on disability social security.

37.     On June 29, 2020, the Plaintiff was sent a letter from Swatch stating "As of the date of the letter, you have not reported to work since May 11, 2020 and you have exhausted all available 2020 time off accruals.  In addition, we have not received medical certification of any incapacity to perform the essential functions of your job."  The letter further stated that they were treating his absence as a resignation and his position was terminated effective July 2, 2020.

38.     The Plaintiff went into an intensive outpatient therapy program for his anxiety at Memorial Healthcare Systems Outpatient on July 27, 2020 and was in the program for eight weeks with Tracy Klein.

39.     On December 23, 2020, there was an attack on the Plaintiff and his car while was driving on US 95 Southbound wherein a bowling ball sized object was thrown from a white pickup truck and smashed into his front grill which caused approximately $6,000 worth of damage.  The Plaintiff was unable to identify the perpetrators as it occurred too quickly and out of the blue.  He filed a claim with Geico car insurance.  Similarly, Plaintiff notified the EEOC of the attack and Plaintiff's belief that it was connected to Swatch.  LinkedIn notified him that "Micheal" had visited the Plaintiff's personal LinkedIn website on December 3, 2020 at 4:35 pm.  This was 20 days before his car was attacked.

40. On June 23, 2021, Geico called the Plaintiff and said that someone had repeatedly called them saying that the Plaintiff been involved in an accident in Ohio. This allegation was fraudulent.

41. At some point in the beginning of December 2021, Geico notified the Plaintiff that they were still receiving fraudulent calls from people including one named Crystal (which the Plaintiff does not believe to be coincidental as he works daily with crystals in watches) and another named Michael Hernandez (likely named after an alleged serial killer as well as possibly being connected to "Michael"), as well as people with the names similar to Maikel. The Plaintiff believes that these names were being left as both a clue to the identity as well as an active threat.

42. The Plaintiff received an Email from Geico on March 2, 2022, which stated that the calls were continuing. At this point, the Plaintiff updated the EEOC with the evidence showing that Swatch employees were continuing the harassment long after his separation from employment.

43. On July 30, 2022, Plaintiff received a "Right to Sue" Letter from the EEOC.

44. Plaintiff has satisfied all conditions precedent to bringing this action or these conditions have been waived or otherwise excused.

45.     Plaintiff has retained the undersigned attorney to represent him in this action and is obligated to pay said attorney a reasonable fee for his services.

## COUNT I: VIOLATION OF FCRA (RACE AND NATIONAL ORIGIN DISCRIMINATION)

46.     This is an action for discrimination based upon race under the FCRA.

47     Plaintiff reasserts the general allegations as set forth above in paragraphs 1-45 and incorporates these allegations herein by this reference.

48.     Swatch violated the FCRA by discriminating against Plaintiff based upon his race and national origins for reasons including but not limited to, failing to stop the hostile work environment created by some of the Plaintiff's Spanish-speaking coworkers, requiring him to work in a high temperature room, refusing accommodations for his car accident-related injuries, and allowing further harassment and intimidation to occur after the Plaintiff filed his EEOC complaint.

49. As a result of Defendant's violations of the FCRA, Plaintiff has been damaged.

WHEREFORE, Plaintiff, ALEXANDER YANES, prays that this Court will:

a. Order Defendant, THE SWATCH GROUP (U.S.) INC., to remedy the race and national origin discrimination of Plaintiff by:

      i. Paying appropriate back pay;

      ii. Paying prejudgment and post-judgment interest;

      iii. Paying front pay in lieu of reinstatement;

      iv. Paying for lost benefits including medical insurance, pension and retirement plan;

      v. Providing any other relief that is appropriate.

b. Enter an order against Defendant for compensatory damages;

c. Enter an order against Defendant for punitive damages;

d. Grant Plaintiff costs and a reasonable award of attorney's fees pursuant to Section 760.11(5), Florida Statutes.

## COUNT II: VIOLATION OF TITLE VII (RACE AND NATIONAL ORIGIN DISCRIMINATION)

50.    This is an action for discrimination based upon race under Title VII.

51.    Plaintiff reasserts the general allegations as set forth above in paragraphs 1-45 and incorporates these allegations herein by this reference.

52.    Defendant violated Title VII by discriminating against Plaintiff based upon his race for reasons including but not limited to failing to stop the hostile

work environment created by some of the Plaintiff's Spanish-speaking coworkers, requiring him to work in a high temperature room, refusing accommodations for his car accident-related injuries, and allowing further harassment and intimidation to occur after the Plaintiff filed his EEOC complaint.

53. As a result of Defendant's violations of the Title VII, Plaintiff has been damaged.

WHEREFORE, Plaintiff, ALEXANDER YANES, prays that this Court will:

a. Order Defendant, THE SWATCH GROUP (U.S.) INC., to remedy the race and national origin discrimination of Plaintiff by:

    i. Paying appropriate back pay;

    ii. Paying prejudgment and post-judgment interest;

    iii. Paying front pay in lieu of reinstatement;

    iv. Paying for lost benefits including medical insurance, pension and retirement plan;

    v. Providing any other relief that is appropriate.

b. Enter an order against Defendant for compensatory damages;

c. Enter an order against Defendant for punitive damages;

d. Grant Plaintiff costs and a reasonable award of attorney's fees pursuant to Section 760.11(5), Florida Statutes.

**COUNT III: VIOLATION OF §1981 (RACE AND NATIONAL ORIGIN)**

54.  This is an action for discrimination based upon race/national origin under 42 U.S.C. §1981. Defendant deprived Plaintiff of his rights of equal protection of the law against discrimination on the basis of race and national origin.

55.  Plaintiff reasserts the general allegations as set forth above in paragraphs 1-45 and incorporates these allegations herein by this reference.

56.  Defendant violated §1981 by intentionally and purposefully treating Plaintiff differently in the terms and conditions of his employment because of his race and national origin, including but not limited to, failing to stop the hostile work environment created by some of the Plaintiff's Spanish-speaking coworkers, requiring him to work in a high temperature room, refusing accommodations for his car accident-related injuries, and allowing further harassment and intimidation to occur after the Plaintiff filed his EEOC complaint.

57.  Defendant's discriminatory actions had the purpose and effect of denying the Plaintiff rights in connection with his employment with Swatch that employees outside his race and national origin were allowed to enjoy.

58. As a result of Defendant's violations of §1981, Plaintiff has been damaged.

WHEREFORE, Plaintiff, ALEXANDER YANES, prays that this Court will:

a. Order Defendant, THE SWATCH GROUP (U.S.) INC., to remedy the race and national origin discrimination of Plaintiff by:

    i. Paying appropriate back pay;

    ii. Paying prejudgment and post-judgment interest;

    iii. Paying front pay in lieu of reinstatement;

    iv. Paying for lost benefits including medical insurance, pension and retirement plan;

    v. Providing any other relief that is appropriate.

b. Enter an order against Defendant for compensatory damages;

c. Enter an order against Defendant for punitive damages;

d. Grant Plaintiff costs and a reasonable award of attorney's fees pursuant to Section 760.11(5), Florida Statutes.

## DEMAND FOR JURY TRIAL

Plaintiff, ALEXANDER YANES., hereby demands trial by jury on all claims triable by right of jury under state or federal law.

Dated this 27th day of October 2022

Respectfully submitted,

*Daniel H. Hunt, Esq.*

Daniel H. Hunt, Esq.
P.O. Box 565096
Miami, FL 33256
Independent Co-Counsel with Marble Law
Counsel for Plaintiff
Telephone: (305) 495-5593
E-mail: dhuntlaw@gmail.com
Florida Bar No.: 121247